## COMMONWEALTH *vs.* ALBERT TOBIAS.

Suffolk. Nov. 23, 1885. — Feb. 24, 1886. DEVENS & GARDNER, JJ., absent.

A complaint, under the Pub. Sts. *c.* 57, § 5, alleging, in one count, that the defendant, at a time and place named, sold a certain quantity, to wit, one pint, of adulterated milk, to wit, milk containing less than thirteen per cent of milk solids, and, in another count, alleging that the defendant, at the same time and place, had in his possession a certain quantity, to wit, one pint, of adulterated milk, to wit, milk containing less than thirteen per cent of milk solids, with intent then and there unlawfully to sell the same, is sufficient, without further alleging that the milk was analyzed, and found, on analysis, to contain less than thirteen per cent of milk solids.

The Pub. Sts. *c.* 57, § 10, do not prohibit any person not an inspector of milk from making a complaint for a violation of the provisions of the chapter.

A complaint, under the Pub. Sts. *c.* 57, § 5, alleging that the defendant sold one pint of adulterated milk, to wit, milk containing less than thirteen per cent of milk solids, is not supported by proof that he sold the milk as skimmed milk out of a tank marked as required by § 7, although the milk was watered.

A complaint, under the Pub. Sts. *c.* 57, § 5, alleging a sale of adulterated milk, to wit, milk containing less than thirteen per cent of milk solids, is supported by proof of a sale of milk, which, by the removal of a part of the cream, has been reduced in solids below thirteen per cent, unless the milk was sold as skimmed milk, and out of a vessel, can, or package marked as required by § 7 ; and it is not necessary that a complaint charging such an offence should be drawn under § 6.

At the trial of a complaint, under the Pub. Sts. *c.* 57, § 5, alleging, in the first count, a sale by the defendant, at a time and place named, of adulterated milk, and, in the second count, the having in his possession, at the same time and place, such milk, with intent unlawfully to sell the same, the defendant asked the judge to rule, that, "if the jury find, on the evidence, that there was a consummated sale, they cannot convict under the second count." The judge declined so to rule ; and, after instructing the jury as to what would authorize a conviction on the first count, instructed them that, " if they should further find that the defendant kept the same milk with intent to sell it, they would be authorized to return a verdict of guilty on the second count." *Held,* that the defendant had no ground of exception.

COMPLAINT to the Municipal Court of the Roxbury District of the city of Boston, under the Pub. Sts. *c.* 57, § 5, in two counts. The first count alleged that the defendant, on April 8, 1885, at Boston, " did sell a certain quantity, to wit, one pint, of adulterated milk, to wit, milk containing less than thirteen per cent of milk solids." The second count alleged that the defendant, at the same time and place, did have in his " possession a certain quantity, to wit, one pint, of adulterated milk, to wit, milk containing less than thirteen per cent of milk solids, with intent then and there . . . . to unlawfully sell the same."

In the Municipal Court the defendant moved to quash the complaint for the following reasons : " 1. Because it. contains no legal offence, duly, formally, and substantially set forth. 2. The same is not made by any milk-inspector, or any official authorized to make the same. 3. The same is double, uncertain, and ambiguous. 4. The offence attempted to be charged should be under § 7, and not under § 6, of the Pub. Sts. *c.* 57. 5. The complaint is in other respects uncertain, indefinite, and insufficient."

This motion was overruled. The defendant was then tried, and found guilty.

In the Superior Court, on appeal, before the jury were empanelled, the defendant moved to quash the complaint for the following reasons, among others : " 1. The complaint is not made by any milk-inspector, or any person or official authorized and empowered to make the same. 2. The complaint charges no legal offence, properly and substantially ; but is double, uncertain, and ambiguous. 3. The offence attempted to be charged should be under § 7, and not under § 6, of the Pub. Sts. *c.* 57. 4. The complaint is in other respects uncertain, indefinite, and insufficient. 5. The complaint does not allege that there was any analysis made, or that in and by analysis it appeared that it contained less than thirteen per cent, &c." This motion was overruled ; and the defendant excepted.

Trial in the Superior Court, before *Aldrich*, J., who allowed a bill of exceptions, in substance as follows :

The government introduced evidence tending to show the purchase of a quantity of milk from a woman in charge of a shop where pastry and milk were sold ; that said milk, on analysis,

was shown to contain nine and thirty-four one-hundredths per cent of milk solids, and was a watered milk; that the defendant was the proprietor of the shop where said milk was purchased; and that said woman was the servant and agent of the defendant in the sale of said milk.

The defendant introduced the testimony of the woman who was in charge of the shop, and of the proprietor, tending to show that said milk was kept in a tank duly marked "Skim-Milk," and that they sold it as skim-milk, and did not water it.

The defendant asked the judge to rule as follows: "1. If the jury find on the evidence that there was a consummated sale, they cannot convict under the second count. 2. If the jury find and believe that the defendant sold skim-milk out of a tank legally marked 'Skim-Milk,' they cannot convict on this complaint. 3. Selling out of a tank so marked, with no representation save what is indicated by that marking, would be in law a sale of skimmed milk. 4. If the jury find the reason why the milk contained less than thirteen per cent of milk solids was that a portion of the cream was removed, they must find the defendant not guilty. 5. If they find that the milk contained less than thirteen per cent of milk solids solely in consequence of a removal of a portion of the cream, they cannot find the defendant guilty under this charge. 6. All the evidence in this case proves no offence under the fifth section of the milk statute. 7. There is no standard for skim-milk. That kind of milk need not contain thirteen per cent of solids. 8. If the defendant's servant sold the milk out of a skim-milk tank, properly marked, and made no false representation as to its quality and character, the defendant cannot be convicted under either count."

The judge declined to give the instructions in the language of these requests, but instructed the jury that, if they should find, upon the evidence, that water had been added to the milk described in the complaint, and that it was watered milk, and that the defendant sold the milk by his servant or agent, they would be authorized to return a verdict of guilty on the first count; that, if they should further find that the defendant kept the same milk with intent to sell it, they would be authorized to return a verdict of guilty on the second count; and that, if the milk was

skimmed milk, they would not be authorized to convict the defendant on either count, upon the evidence that the milk contained less than thirteen per cent of milk solids, unless they should also find that water had been added to the milk, so that it was a watered milk at the time of the alleged keeping and sale.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*G. W. Searle*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

FIELD, J. The complaint was sufficient, and the motion to quash rightly overruled. *Commonwealth* v. *Keenan*, 139 Mass. 193. It is not necessary to allege that an analysis had been made of the milk. *Commonwealth* v. *Bowers*, 140 Mass. 483.

Section 10 of the Pub. Sts. *c.* 57, does not prohibit any person not an inspector from making a complaint.

The construction we give to the Pub. Sts. *c.* 57, §§ 5, 6, 7, and 9, is that these sections prohibit the sale, &c. of milk containing "more than eighty-seven per cent of watery fluid," or "less than thirteen per cent of milk solids," unless it is sold, not as pure milk, but as skimmed milk, and out of a vessel, can, or package marked as required by § 7; that, on such a charge, it is immaterial what is the cause of the excess of watery fluid, or of the deficiency of milk solids; that the sale, &c. of milk "to which water or any foreign substance has been added, or milk produced from cows fed on the refuse of distilleries or from sick or diseased cows," is prohibited, whether it is sold as skimmed milk or pure milk, and whether it contains more or less than thirteen per cent of milk solids; and that the sale of skimmed milk as pure milk is prohibited, even if it contains more than thirteen per cent of milk solids, and is prohibited in all cases, unless it is sold as skimmed milk, and out of a vessel, can, or package marked as required by § 7.

One question then is, whether, if the defendant sold the milk as skimmed milk out of a tank marked as required by § 7, he can be convicted on this complaint by proof that the milk was watered. We think he cannot.

The difficulty is in the form of the complaint. Proof that the milk was sold as skimmed milk, out of a tank duly marked,

COMMONWEALTH *v.* TOBIAS. 133

was a good answer to the charge, namely, that of selling "milk containing less than thirteen per cent of milk solids." The quantity of milk solids which skimmed milk must contain was not defined before the passage of the St. of 1885, *c.* 352. *Commonwealth* v. *Luscomb*, 130 Mass. 42, decides that a complaint, which charged that the defendant had in his possession, with intent to sell, " one pint of adulterated milk, to which milk water had been added," could not be supported by proof that the milk was natural milk, but contained less than thirteen per cent of milk solids, because the words " to which milk water had been added" were descriptive of the milk, and identified the charge. It was assumed, without deciding, and it has since been decided, that natural milk which contains less than thirteen per cent of milk solids is adulterated milk, within the meaning of the St. of 1880, *c.* 209, §§ 3 and 7, now the Pub. Sts. *c.* 57, §§ 5 and 9. The court say, that "the question is not whether it was originally necessary to add these words, but whether, having been added, they are so essentially descriptive as to require to be proved." We think the words of the specification, in the complaint in the case at bar, although laid under a *videlicet*, are descriptive of the milk, and identify the offence charged; and that this complaint, for example, could not be maintained by proof of a sale of watered milk, if the milk after it was watered contained more than thirteen per cent of milk solids.

If the offence of selling adulterated milk can be committed in several different ways, namely, by selling milk which contains less than thirteen per cent of milk solids, from whatever cause the deficiency arises, or by selling milk to which water or any foreign substance has been added, or milk from cows fed on the refuse of distilleries, or from sick or diseased cows, whether the milk contains more or less than thirteen per cent of milk solids, as this complaint has set out the method by which the offence was committed, it must be proved as charged.

If, then, the defendant's proof that he sold the milk as skimmed milk, out of a tank duly marked, was a sufficient answer to the offence as charged, it was not competent for the government to rely upon evidence that the milk had been watered, because it had not charged him with selling watered milk,

and whether the milk was watered or not was immaterial in proving the offence as charged. The defendant is found guilty, not of selling milk containing less than thirteen per cent of milk solids, the offence with which he is charged, but of selling milk to which water had been added, an offence with which he is not charged. The jury should have been instructed according to the second request.

If the effect of the removal of a part of the cream was to reduce the milk solids below thirteen per cent, the defendant could be convicted upon a complaint charging him with selling adulterated milk, to wit, milk containing less than thirteen per cent of milk solids, unless he sold it, not as pure milk, but as skimmed milk, and out of a vessel, can, or package marked as required by § 7; and it was not necessary that a complaint charging such an offence should be drawn under § 6.

There remain to be considered the first request for instructions, and the instructions given instead of it. Under statutes containing provisions similar to those in § 5, prohibiting the sale, &c., or having in possession with intent to sell, &c., it has been held that there is but one offence; and that the acts prohibited may all be alleged conjunctively in one count of a complaint or indictment. *Commonwealth* v. *Nichols*, 10 Allen, 199. *Commonwealth* v. *Curtis*, 9 Allen, 266.

In *Commonwealth* v. *Eaton*, 15 Pick. 273, the indictment, which contained but one count, charged that the defendant " did unlawfully offer for sale and did unlawfully sell " one half of a lottery ticket. The statute provided that, "if any person shall sell, or offer for sale, or," &c. any lottery ticket or part of a lottery ticket, he shall " forfeit," &c. The defendant demurred on the ground of duplicity. The court say, " It is true that an offer to sell, without selling, a ticket is an offence by the statute; but an offer to sell and actually selling is but one offence." In the present case, there is clearly no misjoinder of counts, because, if the same milk and the same time are intended in both counts, the counts are for the same offence described as committed in different ways; if the milk was not the same, the counts describe different offences of the same kind. If the same milk was intended in both counts, and the having it in possession was on the same day as the sale, and preliminary and incident to it, it is

plain, we think, that the defendant ought not to be subjected to double punishment. See *Stevens* v. *Commonwealth*, 6 Met. 241. It is plain, too, that the defendant may have had adulterated milk in his custody or possession with intent to sell it, and yet never have sold it; and that he may have sold adulterated milk which he never had in his custody or possession, for he may have bought and sold milk which was never delivered to him. Besides, the offence of having adulterated milk in one's possession with intent to sell it is a continuing offence, and may be committed at a time other than that of the sale of it. The offence charged in each count is not necessarily included in the other: both are misdemeanors subject to the same punishment, and the doctrine of merger has no application. If the complaint had contained only the second count, it would have been supported by evidence that the defendant had had the milk described in his possession with intent to sell it, and had actually sold it. The first request for instructions ought not, therefore, to have been given. The question does not arise, whether, if the defendant had once been convicted of selling adulterated milk, he could again be convicted of having had in his possession on the same day, before the sale, the same milk, with intent to sell it. The rights of the defendant are protected, if he is subjected to but one punishment for both having in his possession with intent to sell, and for selling, the same milk on the same day.

*Exceptions sustained.*