STATE v. M. D. WILLIAMS.[1]

July 29, 1904.

Nos. 14,001—(215).

**Adulteration of Linseed Oil.**

Laws 1897, p. 403, c. 217, § 1, provides that no person or corporation shall manufacture or sell any linseed oil unless the same answers a chemical test for purity recognized in the United States Pharmacopœia; and section 2 provides for making and stamping packages in which the commodity is sold, and that it shall be sold under its true name, and in vessels bearing proper stamps, describing it as pure linseed oil raw or pure linseed oil boiled. This statute was subsequently amended by Laws 1901, p. 549, c. 332, providing that no person or corporation should manufacture or sell any linseed oil unless the same answered to a certain described test, but no reference was made in the amendment to raw or boiled oil. *Held*, that the failure to specifically include boiled linseed oil in the amendment did not indicate an intention that the statute should apply to raw oil only, but that the sale of boiled oil not complying with the required standard is a violation of the statute.

**Police Power.**

Laws 1897, p. 403, c. 217, § 1, as amended by Laws 1901, p. 549, c. 332, prohibiting the sale of linseed oil not answering to a certain chemical test, is within the police power.

Appeal by defendant from an order of the district court for Mower county, Kingsley, J., denying a motion for a new trial, after a trial and conviction of the offense of exposing for sale impure boiled linseed oil. Affirmed.

*Edward H. Crooker,* for appellant.

The statute under which the complaint is made, especially if it applies to boiled linseed oil, is unconstitutional and void, as being an improper and unauthorized exercise of the police power of the state, for the following reasons: (1) Because its effect would be to deprive defendant of his liberty and property without due process of law, and it is therefore in contravention of section 7 of article 1 of the state consti-

[1] Reported in 100 N. W. 641.

tution. (2) Because its effect would be to deprive defendant of his property without due compensation therefor, first paid or secured, and it is therefore in contravention of section 13 of article 1 of the state constitution. (3) Because its effect would be to deprive defendant of, his liberty and property without due process of law, and it is therefore in contravention of section 1 of article 14 of the amendments to the constitution of the United States. (4) Because its effect would be to deny to defendant the equal protection of the law, and it would therefore be class legislation, and in contravention of the state constitution, and also of the constitution of the United States. (5) Because it is not, either by its title, or by its provisions, or by any effect which can be given to it, an act for the protection of the public health, morals, or safety, and it is not within the police powers of the legislature to enact, or of the courts to enforce. (6) Because it attempts to prohibit, not the use of certain adulterants or impurities in boiled linseed oil, nor even only such adulterants or impurities as may be deemed or found to be injurious, but all adulterants and impurities—that is, all substances foreign or extraneous to flaxseed—and it is a fact of common knowledge, of which the court must take judicial notice, and it also appears by the evidence in this case, that the introduction of some adulterant or impurity—some substance foreign and extraneous to and not extracted from flaxseed—into boiled linseed oil, as a drier, is not only not injurious, but is absolutely necessary in order to prepare it for the use to which it is ordinarily put. (7) Because the act, as construed by the state dairy and food commissioner, and as attempted to be enforced against the defendant in this case, would have the effect of prohibiting the manufacture and sale, within the state, of boiled linseed oil manufactured according to processes, and containing only such ingredients as are recognized in the trade generally, and also by the best scientific authority, as processes producing boiled linseed oil of superior quality, and as ingredients which increase the value and utility of the oil. (8) Because its effect would be to prohibit the manufacture and sale, within the state, of boiled linseed oil which, when used for the purposes to which boiled linseed oil is ordinarily put, produces good results, and the use of which in no way can affect the public health, morals, safety, or welfare. (9) Because its effect would be entirely to prohibit the manufacture or sale within the state of raw-

linseed oil. (10) Because the second section of the act deprives dealers in linseed oil, other than manufacturers, of the right to sell linseed oil under their own brand or name.

The Minnesota cases establish the following propositions: That every person has a right to engage in any lawful calling without restriction, except that in certain callings which are closely related to the public health, morals or safety, the legislature has the right to impose such regulations and restrictions as are reasonably necessary for public protection (medical board and patent medicine cases). That the legislature cannot wholly prohibit the manufacture or sale of a useful article of food or medicine (patent medicine, lard, cottolene, baking-powder and preservative cases), unless the same resembles in appearance and flavor and is intended to be used as a substitute for a superior article in common use so that it is necessarily a vehicle for fraud and imposition on the public, and there is reasonable ground for the belief that such fraud and imposition can be prevented only by prohibition (oleomargarine case). That in the handling of compounds similar in appearance and used for a similar purpose, but compounded of different ingredients, the legislature may enact such regulations as to enable the public to ascertain the true character of the article and purchase only such as they prefer, provided that such regulations do not amount to prohibition (lard, cottolene and baking-powder cases). That the regulations imposed must be such as to accomplish the object in view, and if they go further than that, or if they restrict the privileges of one class and leave another class free without some good and obvious reason for such distinction, or if, while salutary in effect as far as they apply, they do not go far enough to afford protection to the entire public, they are invalid (patent medicine and plumber cases). That the legislature may establish a standard for an article such as cream, which from its very nature must contain a given amount of certain substances, failing which it is some other and less valuable article, and forbid the sale of the substandard as such article, while permitting its sale for what it actually is. State v. State Medical Examining Board, 32 Minn. 324. Oleomargarine cases: Butler v. Chambers, 36 Minn. 69; State v. Aslesen, 50 Minn. 5; Collins v. New Hampshire, 171 U. S. 30 (overruling as to interstate commerce); State v. Horgan, 55 Minn. 183; Armour Packing Co. v. Snyder, 84 Fed. 136. Patent Medicine

case:   State v. Donaldson, 41 Minn. 74.   Baking-powder cases:
Stolz v. Thompson, 44 Minn. 271; State v. Sherod, 80 Minn. 446.
Cottolene case:  State v. Hanson, 84 Minn. 42.  Plumber case:
State v. Justus, 90 Minn. 474.  Cream case:  State v. Crescent
Creamery Co., 83 Minn. 284.

*Shepherd & Catherwood,* for the state.

PER CURIAM.

Defendant was prosecuted before a justice of the peace in Mower
county for having, in violation of chapter 217, p. 403, Laws 1897, as
amended by chapter 332, p. 549, Laws 1901, exposed for sale a barrel
of linseed oil which would not sustain tests provided for therein.   He
was convicted before the magistrate.   There was an appeal to the dis-
trict court, where the cause was tried to the court and jury, and there
was a verdict of guilty.   A motion for a new trial was made upon the
evidence, which was overruled, and from this order defendant appeals.

The apparent object of this appeal is to test the validity of the acts
under which defendant was prosecuted.   By the terms of section 1, c.
217, p. 403, Laws 1897, it is provided

> That no person, firm or corporation, shall manufacture   *   *   *
> or expose for sale in this state, any flaxseed or linseed oil, un-
> less the same answers a chemical test for purity recognized in
> the United States Pharmacopia, or any flaxseed or linseed oil
> as "boiled linseed oil," unless the same shall have been put in
> its manufacture to a temperature of 225 degrees (225°) Fahr-
> enheit.

Then follow, in section 2, p. 403, provisions for making and stamp-
ing such packages in which the commodity is sold; also that it is to
be sold under its true name, and each tank or vessel in which it is con-
tained shall bear proper stamps, describing it as pure linseed oil raw, or
pure linseed oil boiled.   Section 3 provided for the penalties for the
violation of the law, and section 4 for the supervision of the subject
by the state dairy and food commission, and suitable espionage by its
servants to secure evidence in case of prosecution.   Section 5, p. 404,
provides for the disposition of the funds collected.   Section 1 of this
act was subsequently amended in terms as follows:

No person, firm or corporation, shall manufacture for sale, or offer or expose for sale in this state, any flaxseed or linseed oil, unless the same answers a chemical test for purity, recognized in the United States Pharmacopœia and any other test that will discover impurities and adulterations in linseed oil. All linseed oil that shall show more than two per cent. shrinkage when subjected to an evaporation test by exposing it to a temperature of three hundred or more degrees of heat, Fahrenheit, for a period of three hours, shall be deemed adulterated within the meaning of this act. Laws 1901, p. 549, c. 332.

By comparison of the two acts relative to this subject, it will be seen there is no reference in the amendment of 1901 to boiled linseed oil, distinctively; and this omission, it is claimed, indicates a legislative intent to exclude from the operation of the act the particular article (boiled linseed oil) which was of the kind and character for the exposure and sale of which defendant was convicted—in other words, that the term "linseed oil" refers to raw "linseed oil," eo nomine, solely in the law as amended. We are unable to adopt this view.

While the reference in the first section of chapter 217, p. 403, Laws 1897, applies to boiled as well as raw linseed oil, yet, in requiring the proper marking and designation thereof in the subsequent section of the first act, the protection against sales of impure boiled linseed oil, in terms, is specifically guarded against; and it is quite evident that the reason why the latter was omitted from the amendment was that the generic term "linseed oil," which is the production of the flax berry, and is used in the arts, includes, as our knowledge of the fact justifies, both the raw and boiled article, and is sufficient to include both. We may readily apply our common knowledge of the fact that the principal purposes of the statute were to protect the public, by police regulation, against the adulteration of the commodity by intrusion into either the raw or boiled material of mineral substances, the effect of which in its use would be an imposition upon the consumers; and it was to mitigate and protect against this evil, which was within legislative information, which was the purport of both laws. We have no doubt, either, that the general, practical use of the oils, either raw or boiled, is in painting, and that boiled oil is used quite as frequently, and as much the subject of adulteration, and is as decidedly injurious to the consumer, as the

raw material, and any distinction such as that suggested would be unreasonable and of no practical utility. We are of the view that the law applies to the commodity which, was exposed for sale in this case. While no restriction could be made against foreign dealers in the sale of their goods brought into this state as articles of commerce, yet the penalty provided by the legislature against adulteration and protection to consumers by penalties against fraud and deceit, and the requirement of proper designations required in these statutes, is clearly within the police power, and not in violation of the constitutional sanction.

A careful review of the evidence leads to the conclusion that the conviction was justified, and that the oil exposed for sale did not sustain a proper test, which it also appears would be sufficient to protect the purchaser against adulteration.

Order appealed from is affirmed.