STATE BOARD OF PHARMACY v. GASAU.

(Supreme Court, Appellate Division, First Department.    December 6, 1907.)

1. ADULTERATION—CREAM OF TARTAR—"DRUG."
    Cream of tartar is a drug within the statutory definition of the words "food" and "drug" in Public Health Law, Laws 1893, p. 1510, c. 661, art. 3, §§ 40, 41.

2. SAME—STATUTORY REGULATIONS—ILLEGAL SALES BY MERCHANTS—PENALTY.
    Public Health Law, Laws 1893, p. 1554, c. 661, art. 11, § 187, as amended by Laws 1897, p. 173, c. 297, confers authority on the state board of pharmacy to license pharmacists, prohibits any person from practicing as a pharmacist without a license, and exempts from the operation of the provision sales by retail dealers or merchants of cream of tartar, etc. Laws 1900, p. 1471, c. 667, art. 11, § 197, provides that all pharmaceutical preparations sold in a pharmacy, store, etc., shall be of the standard quality and purity established by the United States Pharmacopœia, and that every proprietor shall be responsible for the quality of such commodities. Section 199 provides that the provision shall not apply to the sale by merchants of cream of tartar, "except as herein provided." Held, that section 197 is applicable to merchants selling cream of tartar, and the board of pharmacy may prosecute for the penalty prescribed for a violation thereof, the statute as amended indicating a legislative intent to continue to permit the sale of cream of tartar by merchants without procuring a pharmaceutical license, and to devolve on the state board of pharmacy the duty of enforcing the law, and the right to collect the penalties for selling drugs not of the standard of purity.
    Houghton, J., and Patterson, P. J., dissenting.

Appeal from Appellate Term.

Action by the state board of pharmacy against Fred Gasau for the penalty for a violation of Public Health Law, Laws 1893, p. 1554, c. 661, art. 11, § 187, as amended by Laws 1897, p. 173, c. 297. From a determination of the Appellate Term (52 Misc. Rep. 490, 102 N. Y. Supp. 539), affirming a judgment of the Municipal Court in favor of plaintiff, defendant appeals.    Affirmed.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Charles M. Stafford, for appellant.
Hieronimus A. Herold, for respondent.

LAUGHLIN, J.    The defendant has been convicted for selling cream of tartar not of the standard of strength, quality or purity prescribed in the United States Pharmacopœia.

Section 40 of article 3 of the public health law (Laws 1893, p. 1510, c. 661) has not been amended since its original enactment.    It defines the terms "food" and "drug" as follows:

"The term 'food,' when used herein, shall include every article of food and every beverage used by man and all confectionery; the term 'drug,' when so used, shall include all medicines for external and internal use."

Section 41 of the same article of the public health law, entitled "Adulterations," provides, among other things, as follows:

"No person shall, within the state, manufacture, produce, compound, brew, distill, have, sell or offer for sale any adulterated food or drug.    An article

shall be deemed to be adulterated within the meaning of this act: A. In case of drugs: (1) If when sold under or by a name recognized in the United States pharmacopœia, it differs from the standard of strength, quality or purity laid down therein. (2) If, when sold under or by a name not recognized in the United States pharmacopœia, but which is found in some other pharmacopœia or other standard work on materia medica, it differs materially from the standard of strength, quality or purity laid down in such work."

This part of section 41 has not been amended. Subdivision "d" of said section provides that every person violating any provision of the section shall forfeit to the people of the state the sum of $100 for every such violation. Cream of tartar is a drug within the statutory definition already quoted. Article 11 of the public health law, as originally enacted, contains no provision defining the adulteration of drugs, or imposing a penalty therefor. It conferred authority upon the state board of pharmacy to license pharmacists and assistant pharmacists, and in section 186 it prohibited any person from practicing as a pharmacist without such license. By section 187, defining the application of article 11, it excluded from its operation, among other articles, "the sale of the usual domestic remedies by retail dealers in the rural districts." This section was amended by chapter 297, p. 173, of the Laws of 1897, and sales by retail dealers or merchants of cream of tartar, among other things, was exempted from the operation of the provisions of that article. At this time it is quite clear that the purpose of the Legislature in exempting the sale of cream of tartar from the operation of the provisions of article 11 was to render it unnecessary for the seller to procure a license as pharmacist or assistant pharmacist, or to employ a licensed pharmacist or assistant pharmacist in the sale thereof; and the sale of adulterated drugs was left subject to the operation of the provisions of article 3. The Legislature also prescribed in article 11, which originally related wholly, if not principally, to sales without a license, a penalty for a violation thereof (section 190), and authorizes an action by the state board of pharmacy to recover the same. In 1900 the Legislature, by chapter 667, p. 1471, materially amended the provisions of article 11 of the public health law, and added, among other provisions, section 197, which provides as follows:

"Adulteration or Substitution of Drugs, Chemicals and Medicines.

"Subdivision 1. Unless otherwise prescribed for, or specified by the customer, all pharmaceutical preparations, sold or dispensed in a pharmacy, dispensary, store or place, shall be of the standard strength, quality and purity, established by the latest edition of the United States Pharmacopœia.

"Subdiv. 2. Every proprietor of a wholesale or retail drug store, pharmacy, or other place where drugs, medicines or chemicals are sold, shall be held responsible for the quality and strength of all drugs, chemicals or medicines sold or dispensed by him except those sold in original packages of the manufacturer, and those articles or preparations known as patent or proprietary medicines.

"Subdiv. 3. Any person who shall knowingly, wilfully or fraudulently, falsify or adulterate any drug, medical substance or preparation, authorized or recognized in the said Pharmacopœia, or used or intended to be used in medical practice or shall knowingly, wilfully or fraudulently offer for sale, sell or cause the same to be sold, shall be guilty of a misdemeanor; all drugs, medical substances, or preparations so falsified or adulterated shall be forfeited to the board and by the board destroyed."

The application of the article which had previously been defined by section 187 was by the amendment defined in section 199, as follows:

"Sec. 199. Application of Article Limited. This article shall not apply to the practice of a practitioner of medicine, who is not the proprietor of a store for the dispensing or retailing of drugs, medicines and poisons, or who is not in the employ of such a proprietor, and shall not prevent practitioners of medicine from supplying their patients with such articles as they may deem proper, and except as to the labeling of poisons it shall not apply to the sale of medicines or poisons at wholesale when not for the use or consumption of the purchaser, or to the sale of paris green, white hellebore and other poisons for destroying insects, or any substance for use in the arts, or to the manufacture and sale of proprietary medicines, or to the sale by merchants of ammonia, bicarbonate of soda, borax, camphor, castor oil, cream of tartar, dye stuffs, essence ginger, essence peppermint, essence wintergreen, nonpoisonous flavoring essence or extracts, glycerine, licorice, olive oil, sal ammoniac, saltpetre, sal soda and sulphur, except as herein provided. Provided, however, that in the several towns of this state outside of incorporated villages, physicians may compound medicines, fill prescriptions, and sell poisons, duly labeling the same as required by this act, and merchants, and retail dealers may sell the ordinary non-poisonous domestic remedies."

The contention of the learned counsel for the appellant is that his client in selling cream of tartar was subject to the operation of the provisions of sections 40 and 41 of article 3 of the public health law, the material parts of which, so far as applicable, have been stated, and that he was exempt from the operation of the provisions of article 11 and from the penalty now prescribed in section 201 for a violation of said article. It is to be observed that, by the provisions of the public health law as they existed prior to the amendment of 1900, the sale by merchants of cream of tartar was wholly excluded from the operation of the provisions of article 11, but that by the provisions of section 199, added by said amendment, this exemption was modified by the following clause: "Except as herein provided." It is manifest, therefore, that the Legislature intended that some part of article 11, as amended in 1900, should be applicable to merchants selling cream of tartar. An examination of the provisions of the original statute, as amended, indicates that the Legislature intended to continue to permit the sale of cream of tartar, among other things, by merchants without procuring a license or employing a licensed pharmacist or assistant pharmacist. It is also evident, I think, that, with respect to violation of the law by selling adulterated drugs, the Legislature deemed it advisable to devolve upon the state board of pharmacy the duty of enforcing the law and to confer upon it the right to collect the penalties, and to that end section 197 was enacted, defining, so far as applicable to the question now under review, the standard of purity of drugs substantially the same as defined in section 41 of article 3. I am of opinion, therefore, that the clause "except as herein provided," in section 199, leaves the provisions of section 197 applicable to merchants selling cream of tartar, and that they may be prosecuted by the state board of pharmacy for the penalty prescribed in section 201. It may be more pointedly observed, as already indicated, although the question is not presented for decision, that the effect of the amendment is to relieve those selling adulterated drugs from the application of the provisions of sections 40 and 41 of ar-

ticle 3, and to subject them only to the penalty prescribed in section 201 for a violation of the provisions of article 11, for it is not likely that the Legislature would prescribe, assuming that it has the power, two penalties for such an offense, to be prosecuted and recovered in separate actions by different parties. See Excelsior Petroleum Co. v. Lacey et al., 63 N. Y. 422.

It follows that the determination should be affirmed, with costs.

SCOTT and LAMBERT, JJ., concur. PATTERSON, P. J., and HOUGHTON, J., dissent.

HOUGHTON, J. (dissenting). If there be any cause of action against this defendant, I think it is in favor of the people to recover the penalty of $100 provided by the general health law for the sale of an adulterated food or drug, and that no cause of action exists in favor of this plaintiff to recover the $25 penalty prescribed by the Pharmacy Act.

General merchants who sell "cream of tartar," "olive oil," "castor oil," "ammonia," and the other articles enumerated, to my mind, are plainly excepted by section 199 from the provisions of the pharmacy law. The primary object of article 11, of the health law, which is entitled "Pharmacy," is to regulate druggists and the preparation and sale of medicines. The article does not in express terms prohibit the sale of impure drugs. Subdivision 1 of section 197 prescribed that "pharmaceutical preparations" must be of the purity and strength established by the United States Pharmacopœia. In order that the plaintiff may recover the penalty imposed by subdivision 4 of section 201, "cream of tartar," "olive oil," "castor oil," and the like must be deemed "preparations" of that character. A "pharmaceutical preparation" is primarily a combination of drugs compounded for medicinal uses.

Recognizing this strict meaning, but realizing, also, that many harmless drugs and chemical preparations need not be sold under the supervision of expert pharmacists, the Legislature, by section 187 of the act of 1893 (page 1554, c. 661), excepted from the provisions of the pharmacy article the "usual domestic remedies" when sold by dealers in rural districts, and specified what was deemed such remedies. This exemption section was remodeled by chapter 297, p. 173, Laws 1897. By such amendment, retail dealers and merchants, wherever trading, were permitted to sell various specified articles, including "cream of tartar," and were excepted from the operation of the pharmacy law. Retail dealers in the rural districts were still permitted to sell the "usual domestic remedies," but the articles which they could sell were reclassified. For example, they were still permitted to sell "aloes," "myrrh," "arnica," and like remedies, but "borax," "camphor," "sulphur," and other articles which were enumerated in the law of 1893 as properly sold by rural dealers were shifted to the list of articles which general merchants, wherever located, might sell. The amendment of 1897 clearly shows that the Legislature intended to allow general retail merchants to sell the articles specified, and not to confine their sale to drug stores in charge of licensed pharmacists.

:Such merchants must sell pure drugs, as provided by section 41 of the general health law, and were subject to the penalty of $100 in an action brought by the people if they did not, but the provisions of the pharmacy act did not apply to them at all, for they were expressly exempted from its provisions.

I do not think the words "except as herein provided," in section 199 (Laws 1900, p. 1481, c. 667), had the effect of bringing merchants within the provisions of the pharmacy law or under the jurisdiction of the state board of pharmacy. There is found in the section itself sufficient to which these words can relate, without construing them to apply to the broad provisions of the pharmacy act, the principal object of which is to regulate the sale of medicinal, "pharmaceutical preparations." There is no punctuation, aside from a comma, from the beginning of the section to the end of the words. Several exemptions are provided. "Paris green" may be sold only for destroying insects, but "any substance for use in the arts" and "dye stuffs," whether poisonous or not, may be sold. Many substances used in the arts and in paints and dye stuffs are poisonous, and, if so, they are required to be labeled when sold. The words "except as herein provided" do not relate exclusively to the exemption of merchants selling the specified articles, but they relate to all the exemptions of the section, and find ample scope for their application. "Cream of tartar" and "olive oil" and "licorice" and "essence of peppermint" are not in any proper sense "pharmaceutical preparations," and the prescribed standard of purity for such preparations does not apply to them, and there is no reason why it should.

If the defendant has violated the health law by selling an impure food or drug, he can be prosecuted by the people for such act; but I do not think this plaintiff has any cause of action against him. Any other construction tends to drive the sale of essences and ordinary articles used in cooking and in the household into drug stores, instead of permitting their sale by merchants of various kinds. The Legislature could not have intended any such thing.

I think the judgment should be reversed.

PATTERSON, P. J., concurs.