## AMERICAN LINSEED OIL CO. v. WHEATON.

Where a subject is within the police power, it is for the Legislature to say what the remedy shall be; and, unless in conflict with some constitutional provision, the law will be upheld.

Pol. Code, § 2897, fixing a standard of purity for linseed oil, and forbidding sale of oil not complying therewith, and section 2898, providing for the labeling of linseed oil, and section 2899, charging the Food and Dairy Commissioner with the enforcement of such sections, are within the police power of the state.

Labeling a compound "40 per cent. thinner and 60 per cent. linseed" cannot be held to take it out of Pol. Code, §§ 2897-2899, fixing a standard of purity for linseed oil, and forbidding a sale of oil not complying therewith and providing for the labeling of linseed oil, and charging the Food and Dairy Commissioner with the enforcement of such sections, on the theory that it does not tend to defraud, and the purchaser knows what he is buying, as section 2898 provides the only method of labeling linseed oil, and section 2897 makes it unlawful to sell the compound no matter how labeled.

Labeling a linseed oil compound "40 per cent. thinner and 60 per cent. linseed" does not inform the purchaser what he is buying, or relieve the transaction from the taint of fraud, for he is not notified by such label of what the "40 per cent. thinner" is composed, and therein lies the opportunity for fraud.

The fact that the ingredient used as a thinner in a linseed oil compound may be absolutely harmless will not prevent such compound from being classed as adulterated, and within the prohibition of Pol. Code, § 2897, where not coming up to the standard of purity prescribed in that section.

(Opinion filed, Feb. 23, 1910.)

Apeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action for injunction by the American Linseed Oil Company against A. H. Wheaton, Food and Dairy Commissioner. From

an order sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

*Hugh A. Meyers* and *C. A. Christopherson,* for appellant.

The right of the state to pass all needful laws, even prohibitive · laws, for the protection of the health of its citizens is settled beyond controversy. This compound is not known or used as an article of food, the label clearly state, "For commercial purposes," therefore the law in question could not be for the purpose of protecting the health of the citizens of the state. Chesapeake & O. R. Ry. Co. v. State, 105 Va. 297. Police power of a state has been exercised in the passage of laws which will promote the general welfare and prosperity of the public, but in no instance has it ever passed an arbitrary or prohibitive act in such cases. Standard Oil Co. v. State of Tenn., 100 S. W. 705; N. W. Nat'l Life Ins. Co. v. Rigg, 203 U. S. 243; Roswell v. Security Mut. L. Ins. Co., 104 N. Y. S. 130. Legislative authority cannot deprive a man of life, liberty or property, except when he is convicted of a crime or the sacrifice of his property is demanded by a just regard for the public welfare. Atchison & N. R. Co. v. Bady, 6 Neb. 37, 29 Am. Rep. 356. The Linseed Oil Law of South Dakota, if applicable to the case in part yields no permission to the plaintiff to sell his compound with linseed oil within the state. It does not presume to regulate as to the sale of linseed oil compound, but to prohibit. It does not say that linseed oil compounds shall be permitted to be sold in the state, providing they are *labeled* with the ingredients and percentage thereof. It absolutely *prohibits* their sale. Booth v. People, 186 Ill 43; People v. Marx, 99 N. Y. 377; Chicago Eetc., Ry. Co. v. State, 53 Am. St. 557; State v. Scougal, 51 N. W. 853.

*S. W. Clark, Atty. Gen., Geo. J. Danforth, State's Atty.,* and *Alpha F. Orr,* for respondent.

The exercise of the police power over economic interests may be divided as follows: 1. *protection against fraud;* 2. protection against oppression and the promotion of economic liberty; 3. public convenience and advantage; 4. compulsory benefits. Freund on Police Power, Sec. 12. For the prevention of fraud

and oppression, publicity and notice is as a rule the best and most adequate method of police regulation. A very common form of notice consists in marks, signs, labels or stamps which are required to be affixed to articles of commerce in order to advise the public of their true nature. The purpose may be either protection against danger, or *protection against fraud.* Freund on Police Power, Sec. 41; State v. Snow, 11 L. R. A. 355; State v. Sherod, 50 L. R. A. 660. The police power extends to prevent imitations, so that the public may not be deceived into buying an inferior article on account of its similarity in appearance to a genuine article. Freund on Police Power, Secs, 280 and 285. It is applied to weights and measures so as to prevent deception and fraud. Freund on Police Power, Secs. 272, 273, and 274.

McCOY, J. The plaintiff in its complaint alleged that it has never sold or offered for sale, within the state of South Dakota, any linseed or flaxseed oil purporting to be pure or labeled as such, which did not answer the chemical test for purity as recognnized in the United States Pharmacopoeia, unless the same complied with the statute of this state relative to adulterations of linseed oil, and that plaintiff has never sold, or offered for sale, any linseed oil, representing the same to be pure, which was not pure linseed oil, and which was not labeled as required by the South Dakota statute. The plaintiff has a large number of customers within this state, and that plaintiff has certain compounds with linseed oil, which it has extensively offered for sale to its said customers, and which compounds are known and labeled as follows: "The American Linseed Oil Co., Boiled Oil, with Thinner and Dryer for Commercial Purposes. The American Linseed Oil Co., Raw Linseed Oil, with Thinner for Commercial Purposes." The defendant, the Food and Dairy Commissioner of the state of South Dakota, acting in his official capacity, has opposed the sale and introduction of the aforesaid compounds of linseed oil within this state, and has unlawfully and without authority of law written and advised all dealers in compounds of the aforesaid nature to the effect that said plaintiff was violating the provisions of the law, and advised the customers of plaintiff not to contract for or sell such compounds of plaintiff, under penalty

of prosecution, and that plaintiff on account of the acts of defendant has been deprived of its trade in said linseed oil compounds within this state. The plaintiff, with a desire to eliminate all controversy relative to the sale of such compounds within this state, began labeling said compounds as follows: "The American Linseed Oil Co., Raw Linseed Oil, with Thinner for Commercial Purposes, 40 per cent. Thinner and 60 per cent Linseed. The American Linseed Oil Co., Boiled Linseed Oil, with Thinner and Dryer for Commercial Purposes, 20 per cent. Dryer, 20 per cent. Thinner, 60 per cent. Linseed." That said compound thus labeled were offered for sale within this state, and defendant immediately thereafter wrote to and advised plaintiff's customers not to purchase said compounds; that it was unlawful to sell the same, irrespective of how labeled. That defendant still continues and threatens to advise all customers and dealers to refuse to purchase or receive from plaintiff linseed oil compounds thus labeled, and informing them that, if defendant's instructions are not complied with they will be subject to criminal prosecution. That on account of the said acts of defendant plaintiff has suffered irreparable injury, for which it has no adequate remedy at law, and prays for an injunction against defendant. To this complaint the defendant entered a general demurrer, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained. Plaintiff appeals, assigning as error the ruling and judgment of the court sustaining such demurrer.

The question here presented involves the construction of sections 2897-2899, Rev. Pol. Code, relating to the adulteration and sale of linseed oil. Although discussed in the briefs, we are of the opinion that chapter 196, Laws 1907, is not involved in this case, as that chapter seems to relate solely to mixed paints, and not to linseed oils. Section 2897 is as follows: "No person, firm or corporation shall manufacture for sale, or offer or expose for sale in the state, any flaxseed or linseed oil, unless the same answers a chemical test for purity recognized in the United States Pharmacopoeia, or any flaxseed or linseed oil as 'boiled linseed oil,' unless the same shall have been put in its manufacture to a temperature of two hundred and twenty-five degrees Fahren-

heit." Section 2898 is as follows: "No person, firm or corporation, shall sell, expose or offer for sale any flaxseed or linseed oil unless it is done under its true name, and each tank car, tank, barrel, keg or any vessel of such oil has distinctly and durably painted, stamped, stenciled or labeled thereon the true name of such oil in ordinary bold-faced capital letters, the words 'pure linseed oil raw,' or 'pure linseed oil boiled,' and the name and address of the manufacturer thereof." Section 2899 provides that the State Food and Dairy Commissioner shall be charged with the proper enforcement of all the provisions of this statute. The plain English purport of these sections of the statute is that it is unlawful to sell or offer for sale any form of linseed oils unless the same are up to the standard of purity prescribed by section 2897, and which must be labeled pure linseed oil under section 2898. The sale of any lower grade would be deemed adulterated and within the statutory prohibition. The statute fixes a standard of purity and a method of labeling the same.

The appellant contends that this statute is invalid and unconstitutional because not within the proper police power of the state. We are of the view that this position is not well taken. Statutes prohibiting the sale of commodities in common use are frequent. Tiedeman's Limitations of Police Power, p. 207, said: "A regulation, whatever may be its character, which is instituted for the purpose of preventing injury to the public, and which does tend to furnish the desired protection, is clearly constitutional. But where there is no danger to the public, it is difficult to determine how far tne state may by its police regulations attempt to protect private individuals against each other's frauds. A fraud is, of course, a trespass upon another's private rights, and can always be punished when committed. It is therefore but rational to suppose that the state may institute any reasonable preventative remedy, when the frequency of the frauds, or the difficulty experienced in circumventing them, is so great that no other means will prove efficacious." Laws prescribing weights and measures, regulating bank deposits and inspection thereof, regulating the sale of fertilizer, sale of linseed oil, and many others, are illustrative of this exercise of police power, where the public health,

safety, morals, and the like are not involved, and are held to, be within proper police power, and not in contravention of any constitutional right.

In People v. Wagner, 86 Mich. 594, 49 N. W. 609, 13 L. R. A. 286, the court in construing a statutory regulation fixing the weight of bread loaves, said: "The state may institute any reassonable preventative remedy when the ferquency of fraud, or the difficulty experienced by individuals in circumventing it, is so great that no other means will prove efficacious. The police power of the state is not confined to regulations looking to the preservation of life, health, good order, and decency. Laws providing for detection and prevention of impositions and fraud, as a general proposition, are free from constitutional objection. Bread is an article of general consumption. It is usually sold by the loaf. Each transaction involves but a few pennies, although the number of individual transactions in a large city reaches every day into thousands, and the opportunities for fraud are frequent. It would be practically impossible to prevent fraud in the sale of short-weight loaves of the matter were left to the ordinary legal remedies afforded the individual consumer for fraud or deceit. The amount involved would not justify a resort to litigation."

The case of State v. Williams, 93 Minn. 155, 100 N. W. 641, is an identical case with the case at bar in the principle involved, under practically an identical statute against the adulteration of linseed oil. In this case the defendant, Williams, was prosecuted for selling linseed oil below the statutory standard, and the court held that the statutory regulation prohibiting sales of linseed oil, unless the same answered a chemical test for purity recognized in the United States Pharmacopoeia, was clearly within the police power, and not in violation of the constitutional sanction. In rendering this decision the court, among other things, said: "We may readily apply our common knowledge of the fact that the principal purposes of the statute were to protect the public by police regulation against adulteration of the commodity, by intrusion into either the raw or boiled material of mineral sub-

stances the effect of which in its use would be an imposition upon the consumers; and it was to mitigate and protect against this evil, which was within legislative information, which was the purpose of the law."

In Steiner v. Ray, 84 Ala. 93, 4 South. 172, cited by defendant, it is held that a statute regulating the sale of commercial fertilizer, when the controlling purpose is to guard the agricultural public against spurious and worthless compounds sometimes sold as fertilizer, and to furnish buyers cheap and reliable means of proving the fraud and deception, should such be attempted, is clearly constitutional. While the statute referred to in this case did not attempt to fix a standard of purity, and only related to the labeling and tagging, still this case shows that the subject of sale of commercial fertilizer was within proper police power of the state. When a subject is within proper police power, it is for the Legislature to say what the remedy shall be. Some states take one course and some another; and, unless the legislation comes in conflict with some constitutional provision, the law will be held valid. Tiedeman's Limitations of Police Power, pp. 1-16. Cooley, Const. Lim. p. 706; St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611, I L. R. A. (N. S.) 918. It is generally held constitutional for the Legislature to fix the standard of purity of articles within police regulation, and prohibit sales not within the standard thus fixed. Many of the statutes prescribe a standard of quality for particular articles, and a failure to maintain the standard is deemed to constitute adulteration, regardless of the question whether anything has been actually added to or taken from the thing sold. 2 Am. & Eng. Ency. of Law & Prac. p. 253, and note 8; Com. v. Bowers, 140 Mass. 483, 5 N. E. 469; Com. v. Keenan, 139 Mass. 193, 29 N. E. 477; Com. v. Tobias, 141 Mass. 129, 6 N. E. 217; People v. Bosch, 129 App. Div. 660, 114 N. Y. Supp. 65; State v. Smith, 69 Ohio St. 196, 68 N. E. 1044; State v. Smyth, 14 R. I. 100; State v. Luther, 20 R. I. 472, 40 Atl. 9. The reasonableness of the statutory standard is not open to inquiry on the trial, as it is within the legislative discretion. St. Louis v. Liessing, supra; People v. Cipperly, 101 N. Y. 634, 4 N. E. 107. It is held constitutional to fix the standard or purity

as that recognized in the United States Pharmacopoeia, and any article which does not come up to that standard is deemed adulterated. State v. Hutchinson, 56 Ohio St. 82, 46 N. E. 71; State Board of Pharmacy v. Gasua, 122 App. Div. 803, 107 N. Y. Supp. 409; State v. App. Div. 803, 107 N. Y. Supp. 409; State v. Williams, supra.

It is further contended by appellant that labeling the compound "40 per cent. thinner and 60 per cent. linseed" does not tend to defraud, and that the purchaser knows just what he is purchasing, and that the statute cannot be made to relate to such compounds so labeled. For various reasons we are of the opinion that this position is untenable. In the first place the statute provides the only method of labeling linseed oils. If the statute in question is properly within the police power, it is unlawful to sell the compound, no matter how labeled. Again, the labeling of linseed oil compounds "40 per cent. thinner and 60 per cent. linseed," as set out in the complaint, does not inform the purchasing consumer what he is buying, or relieve the transaction from the taint of fraud and deception. The consumer is not notified by such label of what "40 per cent thinner' 'is composed, and therein lies the opportunity for fraud and deception. The term "thinner" is a very general term, and might be made to cover a multitude of evils; it might be composed of gasoline, kerosene, turpentine, or any other cheap fluid that would readily mix with linseed oil, any of which could be sold to the ordinary consumer, and he would be none the wiser until the paint on his building began to peel off and prematurely fade. The fact that the ingredient used as thinner was absolutely harmless and not at all injurious would not prevent the article sold from being classed adulterated and within the statutory prohibition, where such article did not come up to the standard of purity prescribed by the statute. Of course there is a difference in statutes. Where the statute fixes a standard of purity, everything below the standard is deemed adulterated, whether anything injurious has been added or not, but, where the statute is aimed only at the admixture of poisonous and injurious ingredients, it is then necessary that something injurious be added to make the mixture unlawful,

or within the statute. 2 Am. & Eng. Ency. of Law & Prac. 260. Thus it has been held that the adding of pure water to milk constitutes an adulteration where the statute fixes a standard of purity, and it is also held that where nothing at all has been added, the article is deemed adulterated where it does not come up to the standard fixed by the statute. St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611, 1 L. R. A. (N. S.) 918, 4 Am. & Eng. Ann. Cas. 112; People v. Cipperly, 4 N. E. 107, 101 N. Y. 634; State v. Smyth, 14 R. I. 100; State v. Schenker, 112 Iowa, 642, 84 N. W. 698; 1 Cyc. 942.

The plain object of the statute under consideration is to prevent the possibliity of frauds and impositions that would naturally arise from permitting the sale of adulterated linseed oil—in preventing frauds resulting from the sale of an inferor article for a price which entitles the purchaser to an article up to the standard. Statutes enacted for such purposes are generally held constitutional and within the proper scope of the police power. 2 Am. & Eng. Ency. of Law & Prac. p. 253. The reason for placing such statutes within the police power seems to be the impracticability and almost utter impossibility of detecting the fraud by ordinary means, and the impracticability of the remedy afforded the consumer in circumventing the fraud practiced upon him by ordinary methods. The adulteration of oil is not easily detected. Resorting to common knowledge, even an expert in such oils could not distinguish between pure and adulterated, and determine the extent of the fraud by ordinary observation; it would take some chemical analysis. Sixty barrels of pure linseed oil mixed with 40 barrels of gasoline or kerosene thinner sold as 100 barrels of raw oil compound, for approximately the same price as pure oil, at retail, to consumers in less than barrel quantities—the opportunity to detect the fraud or the extent thereof thus practiced upon the individual consumer would ordinarly be out of the question. It would be practically impossible to prevent such a fraud in the sale of such compounds if the matter was left to the ordinary legal remedies afforded the individual consumer for fraud and deceit. The amount involved would not justify a resort to litigation by the individual. It is the opportunity afforded to com-

mit such frauds and impositions, and the difficulty that would be experienced in detecting and circumventing them, that brings the statute in question within the proper police power. The legislative mind evidently was informed and had these objects in view. Therefore we are clearly of the opinion that the statute in question fixing a standard of purity for linseed oil is properly within the police power, and that defendant was acting within his authority as a public officer charged with the enforcement of the statute. The plaintiff not having shown its oil compounds up to the standard prescribed by the statute, the demurrer to the complaint was properly sustained.

The judgment of the circuit court is affirmed.